Daniel Kalish, ISB No. 12485
dkalish@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
999 West Main Street, Suite 100
Boise, ID 83702
Telephone:    503-334-0695
Facsimile:     206-260-3055

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTTY AMOS, an individual, | Case No.: _____ |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | DEMAND FOR JURY TRIAL |
| IDAHO DEPARTMENT OF CORRECTION, a state agency; DODDS HAYDEN, in his individual capacity; LUKE MALEK, in his individual capacity; BREE DERRICK, in her individual capacity; RUSSELL ROSS, in his individual capacity; DAVID DIETZ, in his individual capacity, VERNON GREENLAND, in his individual capacity; TYLER NICODEMUS, in his individual capacity; JOSHUA FLAVIN, in his individual capacity; KENNETH MEZO, in his individual capacity, and JACOB RAINVILLE in his individual capacity, | |
| Defendants. | |

1 – COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Scotty Amos ("Mr. Amos"), by and through his counsel of record, and for causes of action and claims for relief against Defendants Idaho Department of Correction ("Defendant IDOC"), Dodds Hayden ("Defendant Hayden"), Luke Malek ("Defendant Malek"), Bree Derrick ("Defendant Derrick"), Russell Ross ("Defendant Ross"), David Dietz ("Defendant Dietz"), Vernon Greenland ("Defendant Greenland"), Tyler Nicodemus ("Defendant Nicodemus"), Joshua Flavin ("Defendant Flavin"), Kenneth Mezo ("Defendant Mezo"), and Jacob Rainville ("Defendant Rainville") (Defendants Hayden, Malek, Derrick, Ross, Dietz, Greenland, Nicodemus, Flavin, Mezo, and Rainville hereafter collectively referred to as "Individual Defendants"), alleges as follows:

## I.   NATURE OF THE ACTION

1. Mr. Amos, a former Correctional Officer ("CO") with IDOC, brings this action following his unlawful termination in retaliation for exposing systemic misconduct within the prison system, including the illegal destruction of inmate mail, health service requests, and grievance forms. After his internal complaints were ignored, Mr. Amos spoke to the media as a private citizen on matters of public concern, including inmate safety and IDOC corruption. In response, Individual Defendants issued a pretextual reprimand and terminated Mr. Amos without notice or a hearing, in violation of his constitutional rights and wrongful termination in violation of public policy.

2. Mr. Amos has satisfied all administrative requisites before filing this lawsuit.

3. Mr. Amos seeks all available equitable relief, damages, attorneys' fees, costs, and interest.

///

///

2 – COMPLAINT FOR DAMAGES

## II.     PARTIES

4. Mr. Amos is an adult individual, competent to bring this action, a citizen of the State of Idaho, and a resident of Boise, Ada County, Idaho. He was employed by IDOC at all relevant times.

5. Defendant IDOC is an agency of the State of Idaho (such agency established in Idaho Code ("IC.") Chapter 20), responsible for the supervision and management of individuals convicted of felonies who are sentenced to prison, probation, or parole. At all times relevant hereto, Defendant IDOC's central office was located in Ada County, Idaho. At all times relevant hereto, Defendant IDOC was Mr. Amos' employer.

6. At all times relevant hereto, Defendant Hayden was Chairman of the Idaho Board of Correction (such Board established in IC. Chapter 20). Defendant Hayden is believed to reside in Ada County, Idaho. In the alternative, at all material times, Defendant Hayden was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

7. At all times relevant hereto, Defendant Malek was Vice Chairman of the Idaho Board of Correction (such Board established in IC. Chapter 20). Defendant Malek is believed to reside in Ada County, Idaho. In the alternative, at all material times, Defendant Malek was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

8. At all times relevant hereto, Defendant Derrick was Director of IDOC (such position established in IC. Chapter 20) and responsible for overseeing all aspects of IDOC including probation and parole, prisons, and management services. In the alternative, at all material

times, Defendant Derrick was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

9. At all times relevant hereto, Defendant Ross was Warden at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times Defendant Ross was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

10. At all times relevant hereto, Defendant Dietz was Deputy Warden at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times Defendant Dietz was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

11. At all times relevant hereto, Defendant Greenland was a Lieutenant at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times Defendant Greenland was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

12. At all times relevant hereto, Defendant Nicodemus was a Captain at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times Defendant Nicodemus was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

13. At all times relevant hereto, Defendant Flavin was a Lieutenant with IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the

4 – COMPLAINT FOR DAMAGES

alternative, at all material times Defendant Flavin was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

14. At all times relevant hereto, Defendant Mezo was a Sergeant at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times Defendant Mezo was acting under color of state law and/or was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

15. At all times relevant hereto, Defendant Rainville was a Sergeant at IDOC (such position established in IC. Chapter 20) and is believed to reside in Ada County, Idaho. In the alternative, at all material times acting under color of state law, Defendant Rainville was a final policy-maker over the decision to discipline and/or terminate Mr. Amos, and withhold his bonus.

16. Defendants Hayden, Malek, Derrick, Ross, Dietz, Greenland, Nicodemus, Flavin, Mezo, and Rainville are being sued in their individual capacities under §1983 and §1988 for all available relief.

### III. JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the dispute under 28 U.S.C. §1331. The claims in this action arising under the Constitution, laws, or treaties of the United States.

18. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this complaint occurred in Idaho.

### IV. FACTUAL ALLEGATIONS

19. Mr. Amos began working for IDOC on October 31, 2023, as a CO at Idaho State Correctional Center ("ISCC"). IDOC has a probationary period for new employees before granting

5 – COMPLAINT FOR DAMAGES

permanent status. Mr. Amos successfully completed his probationary period and had a reasonable expectation in the continuation of his employment. In the alternative, Mr. Amos would have successfully completed his probationary period if he had not been illegally terminated. Mr. Amos signed a Security Staff Sign-On Bonus Agreement with IDOC which stated he would receive a $1,500 bonus, part of a larger $9,000 package, provided he complete 2,080 hours (one year) of service. Mr. Amos was promised full benefits including PERSI retirement, medical, dental, vision, and life insurance. He took the job because of the work schedule, the benefits, and the opportunity to serve the public in a meaningful way. What he found inside ISCC was a toxic culture of corruption, negligence, and retaliation.

20.    During Mr. Amos' training on ISCC F Block in November 2023, he asked his Field Training Officer, Corporal Pearson, for additional tasks during a slow shift. Corporal Pearson instructed him to empty a Shred-It bin located in the F Block Pod Control into a larger Shred-It bin in the case manager's office. Both Shred-It bins were in controlled areas to which inmates were not granted access. As Mr. Amos began loading documents into the main Shred-It bin, he discovered that the Shred-It bin contained several unanswered Concern Forms, Health Service Request ("HSR") forms, selective diet requests, move requests, work applications, and a variety of personal documents belonging to inmates. Alarmed by the discovery, especially the HSR forms which are supposed to be placed in a box with a padlock for security and inaccessibility to COs, Mr. Amos immediately notified Corporal Pearson. Corporal Pearson in turn alerted the Unit Sergeant, Sergeant Frahs. Both supervisors agreed that the discovered documents should not be destroyed. Corporal Pearson helped Mr. Amos retrieve about 20 documents from the Shred-It bin so they could be delivered to their intended recipients.

6 – COMPLAINT FOR DAMAGES

21. Mr. Amos believed this incident would spark a wider investigation or policy change at IDOC. It did not. The misconduct continued. IDOC employees routinely discarded inmates' legal mail, documents, and personal property in the Shred-It bin and the trash.

22. On or about December 24, 2023, an inmate was left outside in the dog recreational yard in freezing conditions. Mr. Amos and others were unaware the inmate was missing until a CO from H Block heard the inmate shouting for help and reported it to the F Block phone. Mr. Amos immediately rushed to the recreational yard and brought the inmate inside. Other COs advised Mr. Amos not to report the incident. Mr. Amos ignored their advice. Before his shift the next day, Mr. Amos reported the incident, and the attempted coverup by his fellow COs, by phone and in person to Defendant Greenland, and then reported the same via email to Defendant Greenland, Defendant Nicodemus and other personnel. Mr. Amos reported that the inmate was "shivering and turning blue."

23. Rather than being commended for reporting the incident and the attempted coverup, Mr. Amos was berated and mocked by Defendant Greenland on or about December 25, 2023. Defendant Greenland doubted Mr. Amos' perception of the seriousness of the inmate's condition and accused him of lying.

24. Mr. Amos believed that forgetting an inmate in the freezing yard was a serious safety violation that necessitated reporting and investigation, but internal channels at IDOC were proving ineffective. Rather than keep the information internal, Mr. Amos believed the inhumane treatment of inmates was a matter of public concern. On or about December 26, 2023, as a concerned private citizen, Mr. Amos reached out via his private Facebook account to a local reporter to report the incident and the attempted coverup.

7 – COMPLAINT FOR DAMAGES

25.     On February 7, 2024, Defendant Nicodemus and Defendant Dietz, and/or other Individual Defendants, issued Mr. Amos a formal written reprimand for speaking with local reporters about his concerns. Individual Defendants also contradicted themselves by accusing Mr. Amos of "overreacting" to a "substantiated event" and then reprimanding him for not reporting the incident and not treating it seriously enough by ensuring medical care was provided to the inmate left outside.

26.     In or around June 2024, Mr. Amos documented and reported more incidents involving the mistreatment and neglect of inmates, triggering escalating conflict with his fellow COs. For example, CO Michael Brady conducted a "roll up" of an inmate's property, claimed ISCC "ran out of boxes," and began throwing the inmate's property into bags. However, that same night, inmates discovered a trash can in the F Block classroom filled with that same inmate's personal property, including books, family photos, and other belongings that had not been put in boxes or bags as CO Brady claimed. The inmates reported their discoveries to Mr. Amos and CO Benjamin Lee. Mr. Amos and CO Lee recovered the items and took them to property so inmates could mail them out, donate them, or dispose of them properly. On or about June 30, 2024, Brady arrived late for his day shift and berated the outgoing night shift crew, including Mr. Amos and CO Lee, calling them "lazy pieces of sh*t."

27.     In July 2024, Mr. Amos discovered more answered and unanswered Concern Forms, along with dated inmate mail, stuffed beneath count sheets in a drawer in the F Block pod's Shred-It bin. On or about that same day, Mr. Amos personally handed mail he had pulled from the Shred-It bin to an inmate, "S". The mail was dated two months prior. S was visibly upset, and Mr. Amos explained that if he hadn't found it, S never would have received it. Shortly thereafter, Mr. Amos discovered that inmate "V" was distressed because his medical urine analysis sample had

8 – COMPLAINT FOR DAMAGES

not been delivered to the infirmary by day shift. V, who was experiencing bladder issues (undiagnosed at the time), reported to Mr. Amos that day shift staff refused to accept the urine sample. Day shift COs told him "Nightshift will take care of that after shift change." By the time Mr. Amos, on nightshift, delivered the urine sample to medical, it was no longer viable.

28.    Mr. Amos reported these incidents to Defendant Flavin in or about early July 2024 and submitted a formal hostile work environment complaint against CO Brady, citing CO Brady's unprofessional conduct and hostility toward night shift COs. That same day, Mr. Amos also forwarded his complaint to other COs. In or about the same time period, Mr. Amos also filed a decertification complaint against Brady with the Idaho Peace Officer Standards and Training agency ("POST") due to his mistreatment of inmates.

29.    On or about July 7, 2024, Mr. Amos again found a discarded Concern Form in the Shred-It bin and documented it with an IDOC camera. Mr. Amos met with Defendant Rainville and Defendant Flavin shortly thereafter to discuss these recurring issues, including discarded inmate mail and property, and was asked to document their conversation in an email. He did so that evening. Defendant Rainville and Defendant Flavin indicated they would share Mr. Amos' concerns and documentation with Kimberly Kidwell, paralegal for the inmates. On information and belief, Defendants Rainville and Flavin never did. After a few days, Mr. Amos reported his concerns with documentation directly to Ms. Kidwell. She responded to Mr. Amos writing, "Concern forms are extremely important for me to receive as they become legal documents and the inmate could potentially submit a grievance or I could receive a subpoena for the request, and if they are not addressed, this could be very problematic in court." Throughout these events, Mr. Amos made repeated efforts to push for accountability while being stonewalled or ignored. His persistence, in the face of institutional apathy and peer hostility, highlighted Mr. Amos'

commitment to inmate rights and correctional standards, even as it increased his personal risk with Individual Defendants.

30. In or about July or August 2024, Ms. Amos had a meeting with Defendant Mezo, in which Defendant Mezo specifically threated that he and/or other Individual Defendants would be "taking some sort of action" against him for notifying inmates that their mail, property, and other documents had to be taken out of the Shred-It bin and trash receptacles.

31. When internal channels failed to stop the reoccurring misconduct, Mr. Amos exercised his First Amendment rights and again contacted local media, including but not limited to investigative journalists Riley Shoemaker, Ian Stevenson, and Alex Brizee. Mr. Amos disclosed what he witnessed inside ISCC, including the destruction of inmate mail, property, and medical forms, the cover-up of the December 24, 2023 incident where an inmate was left outside in freezing conditions, and a pattern of institutional abuse and apathy. Mr. Amos' communication with these journalists was not part of his job duties. He was speaking as a private citizen on issues of public concern. In about early September 2024, local media began publishing stories on IDOC/ISCC based Mr. Amos' disclosures and named Mr. Amos as a source.

32. Defendant Ross, and/or Individual Defendants, terminated Mr. Amos shortly thereafter, on September 14, 2024. Mr. Amos' exercise of his constitutional rights, including speaking to members of the media, was a significant factor in Individual Defendants' decision to discipline and terminate Mr. Amos. He received no due process. There was no notice of termination, no opportunity to respond, no hearing on his termination, and he did not receive his $1,500 bonus and/or his $9,000 bonus.

///

///

10 – COMPLAINT FOR DAMAGES

## V.  CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION: Free Speech Retaliation (42 U.S.C. §1983)

### (Against Individual Defendants)

33. Mr. Amos realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

34. Individual Defendants and/or a final policy-maker at IDOC acted under color of state law when they intentionally deprived Mr. Amos of his constitutional rights.

35. As a public employee, Mr. Amos enjoyed the right to freedom of speech under the First Amendment to the Constitution.

36. Mr. Amos' statements to local media via social media, text message, and phone calls were on matters of public concern and made as a private citizen and not pursuant to his official job duties as an employee of IDOC.

37. Mr. Amos' free speech interests outweighed Individual Defendants' and/or Defendant IDOC's interests.

38. The adverse actions taken by Individual Defendants and/or a final policy-maker at IDOC, as described above, were done with deliberate indifference to Mr. Amos' right to engage in free speech under the First Amendment.

39. At all material times, Individual Defendants had final policy-making authority with respect to the allegations incorporated herein.

40. In the alternative, Individual Defendants did not have final policy and/or decision-making authority, but a final decision maker at IDOC ratified Individual Defendants' decisions with respect to the allegations incorporated herein.

11 – COMPLAINT FOR DAMAGES

41. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's officially adopted policies with respect to the allegations incorporated herein.

42. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's custom and practice with respect to the allegations incorporated herein.

43. In the alternative, Individual Defendants failed to create or implement sufficient and adequate procedural safeguards to protect Mr. Amos' First Amendment right to free speech.

44. Mr. Amos' decision to exercise his First Amendment rights was a substantial factor with respect to the allegations incorporated herein, including but not limited to discipline and termination.

45. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has incurred and continues to incur lost income in an amount to be determined by a jury at trial.

46. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has suffered and will continue to suffer mental stress, anger, humiliation, inconvenience, loss of enjoyment of life and other non-economic losses in an amount to be determined by a jury at trial.

47. Individual Defendants acted with a reckless disregard for Mr. Amos' constitutional rights and Mr. Amos is entitled to an award of punitive damages in an amount to be determined by a jury at trial.

48. Mr. Amos is entitled to an award of attorneys' fees for prosecuting this action under 42 U.S.C. §1988.

///

## SECOND CAUSE OF ACTION

### Freedom of Association Retaliation (42 U.S.C. §1983)

### (Against Individual Defendants)

49. Mr. Amos realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

50. As a public employee, Mr. Amos enjoyed the right to freedom of association under the First Amendment to the Constitution.

51. Individual Defendants and/or a final policy-maker at IDOC acted under color of state law when they intentionally deprived and/or retaliated against Mr. Amos for exercising his constitutional rights.

52. Mr. Amos' association with local reporters was as a private citizen and not pursuant to her official job duties as an employee of IDOC.

53. Mr. Amos' free association interests outweighed Individual Defendants' and Defendant IDOC's interests.

54. Individual Defendants' adverse actions, as described above, were done with deliberate indifference to Mr. Amos' right to engage in free association under the First Amendment.

55. At all material times, Individual Defendants had final policy-making authority with respect to the allegations incorporated herein.

56. In the alternative, Individual Defendants did not have final policy and/or decision-making authority, but a final decision maker at IDOC ratified Individual Defendants' decisions with respect to the allegations incorporated herein.

///

///

13 – COMPLAINT FOR DAMAGES

57. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's officially adopted policies with respect to the allegations incorporated herein.

58. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's custom and practice with respect to the allegations incorporated herein.

59. In the alternative, Individual Defendants failed to create or implement sufficient and adequate procedural safeguards to protect Mr. Amos' First Amendment right to free association.

60. Mr. Amos' decision to exercise his First Amendment rights was a substantial factor with respect to the allegations incorporated herein, including but not limited to discipline and termination.

61. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has incurred and continues to incur lost income in an amount to be determined by a jury at trial.

62. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has suffered and will continue to suffer mental stress, anger, humiliation, inconvenience, loss of enjoyment of life and other non-economic losses in an amount to be determined by a jury at trial.

63. Individual Defendants acted with a reckless disregard for Mr. Amos' constitutional rights and Mr. Amos is entitled to an award of punitive damages in an amount to be determined by a jury at trial.

64. Mr. Amos is entitled to an award of attorneys' fees for prosecuting this action under 42 U.S.C. §1988.

## THIRD CAUSE OF ACTION

### Violation of Property Interest (42 U.S.C. §1983)

### (Against Individual Defendants)

65. Mr. Amos realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

66. As a public employee, Mr. Amos enjoyed the right to due process prior to deprivation of property under the Fourteenth Amendment to the Constitution.

67. Mr. Amos successfully completed his probationary period and had a reasonable expectation in the continuation of his employment.

68. In the alternative, Mr. Amos had a legitimate expectation of continued employment in his position based on policies and work practices at IDOC, the offer letter, state law, and communications on which he relied before beginning his employment at IDOC.

69. At all material times, Individual Defendants had final policy-making authority with respect to the allegations incorporated herein.

70. In the alternative, Individual Defendants did not have final policy and/or decision-making authority, but a final decision maker at IDOC ratified Individual Defendants' decisions with respect to the allegations incorporated herein.

71. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's officially adopted policies with respect to the allegations incorporated herein.

72. In the alternative, Individual Defendants and/or a final policy-maker at IDOC acted in accordance with IDOC's custom and practice with respect to the allegations incorporated herein.

15 – COMPLAINT FOR DAMAGES

73. In the alternative, Individual Defendants failed to create or implement sufficient and adequate procedural safeguards to protect Mr. Amos' Fourteeth Amendment due process rights.

74. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has incurred and continues to incur lost income in an amount to be determined by a jury at trial.

75. As a direct and proximate result of the unlawful conduct incorporated herein, Mr. Amos has suffered and will continue to suffer mental stress, anger, humiliation, inconvenience, loss of enjoyment of life and other non-economic losses in an amount to be determined by a jury at trial.

76. Individual Defendants acted with a reckless disregard for Mr. Amos' constitutional rights and Mr. Amos is entitled to an award of punitive damages in an amount to be determined by a jury at trial.

77. Mr. Amos is entitled to an award of attorneys' fees for prosecuting this action under 42 U.S.C. §1988.

## FOURTH CAUSE OF ACTION

### Failure to Pay Wages (Idaho Code §45-601, *et seq.*)

### (Against Defendant IDOC)

78. Mr. Amos realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

79. Mr. Amos alleges a cause of action for unpaid wages under the Idaho Wage Claim Act.

80. Mr. Amos was employed by Defendant IDOC.

81. Defendant IDOC promised Mr. Amos a bonus in the amount of $1,500 as part of the compensation for Mr. Amos' personal services.

82. In the alternative, Defendant IDOC promised Mr. Amos a bonus in the amount of $9,000 as part of the compensation for Mr. Amos' personal services.

83. This bonus constitutes wages within the meaning of Idaho Code § 45-601, which defines wages to include compensation such as bonuses.

84. Mr. Amos performed all work required to earn the promised bonus.

85. Defendant IDOC failed to pay Mr. Amos the $1,500 bonus as agreed.

86. In the alternative, Defendant IDOC failed to pay Mr. Amos the $9,000 bonus as agreed.

87. Defendant IDOC was required under Idaho Code §45-606 to pay all wages due and owing by the earlier of the next regular payday or within 10 days following Mr. Amos' separation from employment, not including weekends or holidays.

88. Defendant IDOC failed to do so.

89. Mr. Amos made a written demand for the unpaid wages.

90. Defendant IDOC failed to pay the wages within 48 hours of receiving Mr. Amos' written request.

91. As a result of Defendant IDOC's failure to timely pay wages due, Mr. Amos is entitled to penalties pursuant to Idaho Code §45-607.

92. Additionally, Defendant IDOC's failure to pay wages due and owing entitles Mr. Amos to treble damages under Idaho Code §45-615.

93. Mr. Amos is also entitled to recover attorneys' fees and costs incurred in pursuing this wage claim.

94. As a direct and proximate result of Defendant IDOC's unlawful failure to pay earned wages, Mr. Amos has suffered damages in an amount to be proven at trial.

95. Mr. Amos seeks judgment for the unpaid wages, penalties, treble damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

**WHEREFORE**, Mr. Amos respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

a. Back pay and lost benefits and bonuses, if any, in amounts to be determined at trial;

b. Compensatory (emotional distress) and consequential damages;

c. Front pay and lost benefits in lieu of reinstatement;

d. Pre-judgment and post-judgment interest at the highest lawful rate;

e. Attorneys' fees and costs of this action, including expert witness fees, as appropriate;

f. Punitive Damages under where allowable;

g. An award to offset any tax increase as a result of an award; and

h. Any other such relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED: July 16, 2025.

HKM EMPLOYMENT ATTORNEYS LLP

By: */s/ Daniel Kalish*
Daniel Kalish, ISB No. 12485
Email: dkalish@hkm.com

*Attorneys for Plaintiff*